WAKEFIELD v. PERKINS et al.

(Supreme Court, Special Term, Westchester County.  January 4, 1910.)

1. MUNICIPAL CORPORATIONS (§ 868*)—EXPENDITURE OF VILLAGE FUNDS—
   VILLAGES INCORPORATED UNDER SPECIAL LAW—LAWS GOVERNING.
       Village Law (Consol. Laws, c. 64), § 128, provides that no contract shall be made involving an expenditure by the village, unless the money therefor is on hand, or a proposition has been adopted authorizing the board of trustees to raise such money. Section 380 makes all provisions of the village law applicable to a village incorporated under a special law which are not inconsistent with such special law. *Held*, that section 128 is, and in June, 1909, was, applicable to the village of Port Chester.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1842; Dec. Dig. § 868.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. INJUNCTION (§ 163*)—CONTINUING TEMPORARY INJUNCTION—AFFIDAVITS—
CONFLICTS IN.

Where, upon a motion by taxpayers in a pending taxpayers' action to
continue a temporary injunction restraining a village from paying money
claimed to be due from the village for services performed as an account-
ant, where the affidavits submitted upon the question as to whether when
the contract was made the village had on hand, in the general or contin-
gent fund, money to meet the expenditure, were in substantial conflict, a
temporary injunction should be continued until the question could be de-
termined upon the trial of the action.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 358; Dec. Dig.
§ 163.*]

Action by Wilson F. Wakefield against Franklin P. Perkins, as
president, and others, as trustees, of the Village of Port Chester, and
Philip P. Gaynor. On motion by plaintiff to continue a temporary in-
junction. Motion granted.

Frederick W. Sherman, for the motion.
Strang, Sawyer & Taylor, opposed.

MILLS, J. This is a motion made in the above taxpayers' action to
continue a temporary injunction therein so as to restrain the officials of
the village of Port Chester from paying to the defendant Philip P.
Gaynor the sum of $6,000, claimed by him to be due to him from said
village for the performance of work as a certified public accountant,
under a written contract purported to have been made between him
and said village on the 28th of June, 1909.

The complaint alleges that said contract was invalid as being beyond
the power of the board of trustees of the village to make, by whose
purported authority it was made. This contention is here, upon this
motion, made and urged upon two grounds, viz.: (1) That while the
village of Port Chester was incorporated and still exists under a spe-
cial charter, nevertheless section 128 of the General Village Law
(Consol. Laws, c. 64), applies and is in force as to that village and is
applicable here; and that no proposition had been adopted at any vil-
lage election authorizing such an expenditure; and that, at the time
the contract was attempted to be made, the money for the same was not
on hand; and (2) that the contract was made to secure the perform-
ance of work which the village charter required to be done by various
village officials, there being no express authority, by the charter or
otherwise, to the trustees to employ such outside services.

As to the first contention, it is the claim of the defendants that said
section 128 of the general village law is not applicable to the vil-
lage of Port Chester. It seems to me that this claim is not well made,
and that it must be held that such section is applicable to that village
upon the ground that its provisions, at least to the effect that "no con-
tract shall be made involving an expenditure by the village unless the
money therefor is on hand or a proposition has been adopted authoriz-
ing the board of trustees to raise such money," are not inconsistent
with any provisions of the special charter of that village. Section 380
of the general village law makes all the provisions of that law applica-
ble to a village incorporated under and subject to a special law, which

are not inconsistent with such special law. Therefore I hold that said section 128 is, and in June, 1909, was, applicable to the village of Port Chester. It is undisputed that no such expenditure was ever authorized by a vote of the people.

As to the question or matter of fact whether or not, when the contract was made, the village had on hand, in the general or contingent fund, the money to meet the expenditure contemplated by the contract, the affidavits here submitted seem to me to be in substantial conflict. It is not practicable to properly determine such question upon conflicting affidavits. Therefore the temporary injunction should be continued until such question can be fully determined upon the trial of the action.

As to the second contention made here in behalf of the plaintiff, viz., that the work performed under the contract was merely that which the village charter requires the village officials to perform, it seems to me that this may be true of the second item or class of work called for by the contract. The contract provides for two apparently distinct classes of service: First, the making of an examination of the past tax and assessment records and various compilations therefrom, and for this service $4,800 are to be paid; and, secondly, the devising a new and efficient system of bookkeeping and accounting and for the instruction therein of the various village officers, such as the treasurer, tax receiver, and clerk. There appears to be grave doubt as to the authority of the board of trustees to employ outside services of the latter character. Such services seem to be clearly or at least probably within the scope of the duty of those village officials to perform; and it would seem, for instance, that in the absence of express authority the village trustees would have no more power to employ a public accountant to teach the village clerk how to keep his books and accounts than to employ an outside bookkeeper to actually keep the same for the clerk. It would seem to be a part of the official duty of the clerk, for the performance of which he is paid by his regular compensation, to keep his books in an intelligible, businesslike manner; and that, if he does not know how, he should learn how at his own expense, not at that of the village. It is not apparent to me that a village board of trustees, under its general powers, has authority to employ a schoolmaster to teach the village officials how to perform their official duties, however wise, upon occasion, it might seem to be for them to have and exercise such power. According to the contract here, $1,200 are to be paid for that particular service of instruction.

The explanation given by the defendants of the necessity for employing the services of the first class is that, under the village charter, it is necessary for the board of trustees now to hold a tax sale and to bring actions to recover unpaid taxes, of which a large amount is now in arrears; and that the books and accounts for many years past, purporting to show unpaid taxes and assessments, or which should show them, have been so inaccurately or inefficiently kept by preceding village officials that the board of trustees find it utterly impossible from such books to ascertain the amounts or items of unpaid taxes and assessments so as to enable them to provide for an efficient sale or an

efficient prosecution, by actions in the courts, for the recovery of the arrears.

Under such circumstances, it would seem that the board of trustees might by necessary implication have the power to incur expenses of this class. The power and duty to sue would seem to involve, by fair implication, the authority to incur, as necessary incidental expense, the cost of securing the necessary expert witnesses to obtain the requisite information and properly place it before the court. However, I do not undertake to decide here the question of the lawfulness of either expenditure, further than to hold that there is enough of substantial question in regard to them to render it prudent and proper that the money of the village should not be paid over to the claimant until the validity of the payment has satisfactorily been established upon trial of this action. This is the usual position taken by the court in such an action. Thus, a few days ago, in a similar action, the New York Special Term of this court enjoined payment by the city to the contractor of the Queensboro Bridge until the questions involved could be carefully considered and determined at the trial, and declined to undertake to determine them on the preliminary motion; that is, upon the affidavits. The learned justice presiding in that case in substance stated that the only harm which could come from the maintenance of the temporary injunction would be the running of interest charges upon the principal claimed to be due; and that, if adequate provision was made to secure the city against such interest and costs of the action, no harm could result to it. This seems to be equally true here.

The motion to continue the temporary injunction is therefore granted, upon condition that the plaintiff give proper security to protect the village against interest charges and the costs of the action.